STEPHEN J. WINDHORST, Judge.
lijThe juvenile defendant, B.D., was adjudicated delinquent on a charge of unauthorized use of a motor vehicle, and sentenced to one year, suspended and one year active, intensive probation. Defendant now appeals, alleging that his adjudication violates the prohibition against double jeopardy. We affirm defendant’s adjudication and disposition.
PROCEDURAL HISTORY AND FACTS
On September 14, 2011, prior to the adjudication at issue in this appeal, B.D. was adjudicated delinquent on a charge of theft of goods. On October 13, 2011, he was sentenced to OJJ (Office of Juvenile Justice) for a period of six months with active probation for a period of one year, with both general and special conditions. On October 12, 2012, B.D. was adjudicated “FINS (Family in Need of Support): Minor Ungovernable” and placed on active probation for an additional year with both general and special conditions.
On May 18, 2013, B.D.’s mother notified police that her car had been “stolen” and that she believed that B.D. had taken her car without her permission. B.D. returned the car several hours later. He successfully avoided the police, and a warrant was issued for his arrest.
|30n May 21, 2013, B.D.’s probation officer, Pierre Hollis, filed a Rule to Show Cause on Constructive Contempt alleging that B.D. had violated the terms of his probation in several ways, including the unauthorized use of his mother’s car.[1] Two days later, on May 23, 2013, B.D. was arrested on the outstanding warrant. The following day, May 24, 2013, the Jefferson Parish District Attorney filed a delinquency petition in juvenile court, charging B.D. with unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4.
On May 30, 2013, B.D. was arraigned on the delinquency petition and he denied the charges. A hearing on the Rule to Show Cause was held and B.D. was found in constructive contempt for violating the terms of his probation. He was sentenced *311 to 15 days incarceration at a juvenile facility with credit for time served.
Thereafter, B.D. filed a motion to dismiss the delinquency petition, alleging double jeopardy. The motion was denied on June 25, 2013. On June 26, 2013, B.D. was adjudicated a delinquent on the unauthorized use of a motor vehicle charge. B.D. was sentenced on July 25, 2013.
1 ¿DISCUSSION
In his sole assignment of error, B.D. contends that his constitutional right against double jeopardy was violated when he was sentenced to 15 days for various alleged probation violations, which he contends included the theft of D.D.’s car, and was then later prosecuted for the offense of unauthorized use of a motor vehicle.
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. State v. Bridgewater, 98-658 (La.App. 5 Cir. 12/16/98), 726 So.2d 987. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act. State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 448, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612. La. Ch.C. art. 808 provides that all the rights guaranteed to criminal defendants under the state and federal constitutions, except the right to jury trial, shall be applicable in juvenile court proceedings. See, State ex rel. D.J., 01-2149 (La.05/14/02), 817 So.2d 26.
La. Ch.C. Art. 842 requires the filing of a petition to commence a delinquency proceeding. La. Ch.C. art. 845 provides that the content of the petition shall include the statute or ordinance that the child is alleged to have violated. Next, the Children’s Code requires a formal proceeding during which a juvenile answers the delinquency petition. La. Ch.C. art. 856.[2]
|RLa. Ch.C. art. 811 provides, “When a child enters a denial to the petition, jeopardy begins when the first witness is sworn at the adjudication hearing. When he enters an admission to the petition, jeopardy begins when a valid disposition is made the judgment of the court.”
B.D. first asserts that for the purposes of double jeopardy, this Court should consider his probation officer’s rule to show cause to be a “charging vehicle” which mirrored the alleged facts in the petition filed by the State. B.D. next argues that the contempt hearing, which immediately followed his appearance and answer to the State’s petition, was, in fact, an “adjudication” during which time a witness was sworn and the court considered B.D.’s alleged conduct regarding the stolen vehicle. In his motion to dismiss, B.D. concluded, “The Court found [B.D.] guilty of contempt on May 30, 2013 relying, in part, on the incident in which [B.D.] allegedly used [D.D.’s] car without her permission. The Court then sentenced [B.D.] to incarceration at Rivarde Detention Center for fifteen (15) days.” Relying on La. Ch.C. art. 811, B.D. argues that jeopardy on the charge attached when Pierre Hollis was sworn and recounted the alleged parole violations that B.D. had committed, which included a description of the incident that *312 formed the basis of his unauthorized use of a motor vehicle charge.
The record in this case shows that B.D.’s probation officer, Pierre Hollis, filed a Rule to Show Cause on Constructive Contempt which alleged that B.D. had “repeatedly violated” specific conditions of probation, and set forth the facts of those violations. On May 30, 2013, a hearing was held on the rule for contempt. Prior to its commencement, B.D. entered an appearance and answered the petition on the offense of unauthorized use of a motor vehicle. At that time, the court set a future date for the adjudication hearing of that charge. It was only after B.D.’s denied the allegations of petition, alleging the unauthorized use of a movable, that |fithe hearing on the rule for contempt was held. At the hearing on the rule for contempt, B.D.’s probation officer, Pierre Hollis, recounted almost verbatim the conditions of probation that B.D. had allegedly violated. Hollis did not recount for the court the events of May 20, 2013, although they were detailed in the rule to show cause.
At the conclusion of the hearing, the court found B.D. in contempt and sentenced him to 15 days in a juvenile detention facility with credit for time served. The court did not provide any reasons on the record to support its finding of contempt, nor did it differentiate or specify what alleged acts of probation violation merited time in detention. The court was also informed that B.D. was being held in detention pursuant to a warrant issued for his arrest.
The adjudication hearing on B.D.’s charge of unauthorized use of a motor vehicle took place on June 26, 2013, approximately one month later. At that time the prospective witnesses were sworn. The only witness who testified was B.D.’s mother. At the conclusion of her testimony, the State and defense submitted that matter and the court adjudicated B.D. delinquent on the charge.
Based on the foregoing, the record does not show that an adjudication took place on May 30, 2013. Defendant provides no authority to support the assertion that the Rule to Show Cause on Constructive Contempt, which was based on alleged violations of probation imposed for a crime that defendant had previously been adjudicated delinquent, is the legal equivalent of the delinquency petition that charged defendant with the new offense of unauthorized use of a motor vehicle.
The record shows that the State complied with La. Ch.C. art. 842 in filing a petition that charged B.D. with the offense of unauthorized use of a motor vehicle and, pursuant to La. Ch.C. art. 856, set the adjudication for a future date after B.D. denied the allegations in the petition. The record further shows that the Rule to 17Show Cause on Constructive Contempt was a separate proceeding. Although the events that formed the basis of the unauthorized use of a motor vehicle charge were detailed in the rule that was filed, they were not argued to the Court as a basis for finding B.D. in contempt. Accordingly we find that jeopardy did not attach on May 30, 2013.[3]
*313 The two proceedings notwithstanding, B.D. claims that his 15-day sentence for contempt imposed by the court on May 30, 2013, includes punishment for the unauthorized use of a vehicle charge. To determine whether B.D. was twice sentenced on the same offense, we first consider whether his contempt proceeding for violation of his probation was criminal or civil. If the contempt was civil in nature, his prosecution for the unauthorized use of a motor vehicle would not constitute double jeopardy. State v. Hope, 449 So.2d 633 (La.App. 1 Cir.1984), citing State v. Austin, 374 So.2d 1252 (La.1979).
In civil contempt, the punishment is remedial or coercive; in a criminal contempt case, it is punitive and intended to vindicate the authority of the court. A jail sentence is punitive/criminal if it is limited to imprisonment for a definite period. State v. Desselle, 00-2408 (La.App. 1 Cir. 10/10/01), 809 So.2d 460.
Here, B.D. was held in constructive contempt of court and sentenced to 15 days in Rivarde with credit for time served. It is clear that the 15 days was punishment for violating the probation contract, and that the contempt was criminal, since the incarceration cannot cure the probation violations. However, as | ^stated supra, the act of taking his mother’s car without permission, although listed in the rule to show cause, was not used by the State nor considered by the juvenile court in holding B.D. in contempt of his probation contract. Instead, numerous infractions at school were the basis for the adjudication of contempt of court. We therefore find that B.D. was not sentenced twice for the same criminal conduct.
ERROR PATENT DISCUSSION
We have reviewed the record for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Although the Louisiana Children’s Code is silent as to whether a juvenile criminal proceeding is entitled to an error patent review, we believe that such a review is mandated by La. Ch.C. art. 104 and La. C.Cr.P. art. 920. See State ex rel. D.J., 2008-345 (La.App. 3 Cir. 8/28/08), 995 So.2d 1; State in Interest of B.J., 617 So.2d 238, 243 (La.App. 5 Cir.1993). We find the following errors which merit attention.
At the conclusion of the disposition hearing, the juvenile judge failed to give B.D. notice of the time limit for filing a post-conviction relief application as required by La.C.Cr.P. art. 930.8. In a juvenile case, such notice should be given. State ex reí D.J., supra. If a trial court fails to advise, or provides an incomplete advisal, pursuant to La.C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030. Thus, by way of this opinion, defendant is informed that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La.C.Cr.P. art. 914 or 922.
*314 Inin addition, the record reveals a conflict between the minute entry/commitment and the transcript. The minute entry/commitment indicates that the trial court sentenced B.D. to “the DPSC for a period of 1 year or until 21st birthday whichever is sooner.” However, the transcript reflects that on July 25, 2013, the court ordered the disposition as follows:
THE COURT:
Okay. I will approve the recommendations of the probation department, place him on intensive probation. I’ll sentence him to serve one year. I will suspend that, and place him on active probation. That probation will be intensive according to the contract.
Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter to the trial court with instructions to amend the minute entry/commitment to reflect the sentence pronounced in the transcript.

CONCLUSION

For the above discussed reasons, defendant’s adjudication as delinquent on a charge of unauthorized use of a motor vehicle and his disposition of one year, suspended and one year active, intensive probation is affirmed. We remand this this matter for correction of the commitment in compliance with this opinion. We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
ADJUDICATION AND DISPOSITION AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

. In the Rule to Show Cause, Mr. Hollis alleged that B.D. had "repeatedly violated” probation and the following specific conditions thereof:
(11) Attend school on a daily basis and participate to the best of your ability; be punctual; do not willfully violate school rules, get suspended or expelled.
(12) Obey the reasonable and lawful demands of his/her parents/legal guardians. (14) Abide by a 7pm [sic] curfew seven days a week.
(19) Keep your parents/ guardian informed of your whereabouts at all times.
(21) Refrain from any verbally and physically aggressive behaviors displayed in the school setting.
On 4/26/13 it was reported that [B.D.] came running to Ms. Brown’s classroom and another student tried to close the door to keep [B.D.] from entering. [B.D.] pushed his way in and teased the other student calling him a "retarded ass” and then slapped the other student.
On 5/3/13 it was reported by Mr. Watts that [B.D.] was running around the campus during 4th period. [B.D.] and another student kicked his door, then begin [sic] yelling "Eat-, Open this door you Old F-”. At one point [B.D.] got into into the room and grabbed documents off the Para-professionals [sic] desk and refused to give them to Mr. Watts, until the campus police told him to do so. He then stated that he would “Slap the f— out of me."
On May 20, 2013 it was reported by [D.D.] that [B.D.] stole her car 5/19/2013 while she was sleeping, she did call the police to report her car stolen, and when the police arrived [B.D.] still hadn’t made it home. [D.D.] stated that [B.D.] did not return home until pass [sic] midnight. When [B.D.] returned home, he left the house again and did not return as of 5/20/2013. [B.D.] has 14 absences and one documented suspension since his last court appearance.

. La. Ch.C. art. 856. provides, in relevant part:
A. After the child has been advised pursuant to Article 855, the court shall inquire how the child responds. The child may:
(1) Deny the allegations of the petition, in which case the court shall set the matter for an adjudication hearing.

. B.D. argues that the instant case is analogous to State v. Desselle, 00-2408 (La.App. 1 Cir. 10/10/01), 809 So.2d 460. In Desselle, the defendant was charged by bill of information for kidnapping and moved to quash the bill of information on the basis of double jeopardy. After remand, the first circuit found that the defendant could not be prosecuted by the State for kidnapping because multiple contempt hearings had been held by the family court judge regarding the defendant's acts of not returning her children to her ex-husband pursuant to scheduled visitation judgment. In that case, however, the defendant was specifically found in criminal contempt for violating the visitation judgment *313 and 90-day jail terms were imposed prior to the time that she was charged by the State with kidnapping. In contrast, in the instant case B.D. was not found in contempt for the offense of unauthorized use of a motor vehicle, nor was a sentence imposed for that offense prior to his adjudication hearing on June 26, 2013. Accordingly, Desselle, supra is factually distinguishable.